**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| WOODROW VALASTA DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-12-406-JHP-SPS |
| ) | |
| BILL STURCH-SHERIFF, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss (Dkt. # 18). The Court has reviewed the plaintiff's complaint, the defendants' motion, and a special report prepared at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). While Plaintiff filed a response (Dkt. # 24), after the Court directed him to show cause in writing why the Defendants' Motion to Dismiss should not be granted (Dkt. # 23), the plaintiff does not contest the representations in both the special report and the motion to dismiss that he has failed to exhaust his administrative remedies. Rather, he states:

> In response to the notice of dropping the case, I Woodrow Davis, in due respect, feel that my case should continue, on the bases (sic) of neglect, decrimination (sic) and being mistreated as a inmate in Byran (sic) Co. Jail. As a result, my health is in a worse condition due to pain & suffering that I had to indoer (sic). So I still request a court date.

For the reasons stated below, the Court finds this action should be dismissed for failure to exhaust administrative remedies and for failure to state a claim for relief.

*Background*

According to Plaintiff's Complaint, he was arrested in Atoka, Oklahoma and incarcerated in the Atoka County Jail on the 5th day of April, 2011. On April 12, 2011, Plaintiff was sentenced in the Atoka County District Court to serve time in the Oklahoma Department of Corrections. Plaintiff's Complaint details medical care or lack thereof that he encountered while in the Atoka County Jail. Plaintiff alleges he was denied medical treatment from May, 2011 to July, 2011, while incarcerated within the Atoka County Jail. He claims that the Atoka County Jail refused to supply him with blood pressure medicine and that the facility did not have a working blood pressure machine or any way to test an inmate's blood pressure. He further asserts that the Jail Administrator, Kim Winter,[1] even after being advised that the plaintiff did not have his medication, did nothing to obtain medical care for him. On July 29, 2011, the plaintiff was rushed by unnamed jail staff to the emergency room of the Atoka County Hospital because of high blood pressure. Plaintiff alleges he was instructed to go to the A.B.C. Clinic in Atoka, Oklahoma for a follow up one week later but he was not taken there until August 25, 2011. Plaintiff claims he was "suffering from severe aches and pains and numbness" while in the Atoka County Jail. On August 5, 2011, the plaintiff claims he wrote to the Chief Medical Officer of the Oklahoma Department of Corrections ("DOC") asking to be transported to DOC so he could get medical attention, but he received no reply from DOC.

On August 11, 2011, the plaintiff states he mailed a letter to the Department of Health in Oklahoma City, OK which was returned to him on August 31, 2011. On the same day, plaintiff says

---

[1] Kim Winter has not been named as a defendant in this lawsuit nor does it appear any summons was ever issued to her.

the State Health Inspector, Alisha Dickerson[2] came to the Atoka County Jail and told him she had received a letter from him and wanted to know "What's going on with [him]." Plaintiff complains that Ms. Dickerson addressed him in front of the Jail Administrator, Kim Winters, and two unnamed jailers and all of the inmates in his pod. Out of fear of retaliation, the plaintiff claims he did not say anything when the jail administrator advised the health inspector that he had exhausted his supply of medication and that all of his medical needs had been addressed.

On September 1, 2011, Plaintiff asserts he sent a Grievance to the Jail Administrator complaining because his health problems were not addressed in private and that there was a conflict of interest because Ms. Dickerson is related to the sheriff who runs the jail. The Jail Administrator answered the grievance by posting it on the outside glass of his pod. Plaintiff claims he then sent another grievance to the jail administrator complaining of the lack of privacy in his dealings with her. That evening, Plaintiff asserts his blood pressure was again very high. At that time, the Atoka County Jail had a blood pressure cuff but the jailer was told that the plaintiff's medications had been packed up so they could go with the plaintiff. Plaintiff claims later that evening he was transported to the Bryan County Jail.[3]

Thereafter, Plaintiff's Complaint indicates that, on September 1, 2011, he was transported to the Bryan County Jail where he remained until November 1, 2011. On November 1, 2011, Plaintiff was transported to the Atoka County Jail where he remained until November 15, 2011, at which time he was transported to the Lexington Assessment and Reception Center ("LARC") in

---

[2]Alisha Dickerson has also not been named as a defendant in this lawsuit nor does it appear any summons was ever issued to her.

[3]While all of these facts are contained in plaintiff's complaint, they form the basis of a separate lawsuit brought by Plaintiff against Atoka county officials and/or employees. *See*, *Davis v. McCool*, Eastern District of Oklahoma Case No. CIV-12-394-FHS-SPS. Therefore, none of these facts will be addressed in dealing with the claims against the Bryan County officials and/or employees who are named defendants in this action.

Lexington, Oklahoma.[4] Although detailing events which occurred in the Atoka County Jail,[5] Plaintiff's Complaint focuses on the treatment or lack thereof that he encountered while incarcerated in the Bryan County Jail. Plaintiff alleges he was subjected to cruel and unusual punishment when unnamed defendants "acted in a malicious and sadistic, willful and wanton manner" by placing him in a "Lock-Down Cell" for twelve days, during which time he was not allowed to purchase any clothing or hygiene items, was not given telephone or visitation privileges. Additionally, Plaintiff alleges a violation of the Eighth Amendment claiming while in "Lock-Down" he was not provided "proper medical attention or medications." Plaintiff also claims he was subjected to discrimination because of his race in violation of the Equal Protection Clause when unnamed defendants treated him "unfairly as compared to similarly situated inmates." Finally, Plaintiff alleges the Sheriff failed to properly train his employees on medical and discrimination issues.

In his brief in support of his complaint, Plaintiff claims an unnamed nurse at Bryan County was very rude to him "mainly because he is black." Plaintiff further asserts Bryan County would not let him have his blood pressure medicine. He claims he submitted a medical request to have his blood pressure checked; but, his request was ignored. Later that night Defendant Isenberg checked his blood pressure and called a doctor. The doctor told Defendant Isenberg he would call the nurse but to give him some medicine, watch him for one hour and then check his blood pressure again. About an hour later, the plaintiff's blood pressure had dropped and he was returned to his pod. The plaintiff states he was told that the nurse would see him in the morning, but he did not see the nurse

---

[4] Plaintiff has since been released from the custody of the Oklahoma Department of Corrections.

[5] The Special Report only deals with events occurring in the Bryan County Jail and all of the named defendants appear to be employed or were previously employed by the Bryan County Jail.

or doctor. The plaintiff then claims he filled out another Request to Staff and, the next day, on November 1, 2011, he was returned to Atoka County Jail. The following day plaintiff indicates that a doctor at the A.B.C. Clinic in Atoka, Oklahoma doubled his blood pressure medication and he received that medication until the 15th day of November, 2011, when he was transported to a DOC facility.

Following the removal of the plaintiff's complaint from the District Court of Bryan County, State of Oklahoma, the Court ordered preparation of a special report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). The special report contradicts many of the allegations in the plaintiff's complaint. Specifically, the special report indicates the plaintiff was on lock-down status for no more than seven days following his transfer to the Bryan County Jail. This lock-down status was done according to jail procedures just long enough to ascertain plaintiff's suitability for release into the general population. The plaintiff never filed a grievance regarding this issue.

Furthermore, the jail medical records from Bryan County Jail establish Plaintiff was given medication daily from September 2, 2011 through November 1, 2011. When the plaintiff appeared "flushed," Defendant Isenberg took a blood pressure reading and followed jail protocol by calling the on-call physician's assist, Jeff Williams, and following his instructions. The plaintiff never filed any grievances in relation to his medical claims.

Plaintiff does not identify any specific instances where any of the named defendants personally engaged in "racial taunts, racial epithets [or] racial harassment." Plaintiff never filed any grievances alleging that he was being discriminated against because of his race.

### *Legal Analysis*

Plaintiff was a prisoner as that term is defined in § 1915A(c)[*i.e.* person incarcerated or detained in any facility for violations of criminal law] at the time the allegations contained in his complaint occurred. The defendants in this case are governmental officers and/or employees of a governmental entity [*i.e.* county sheriff and employees of the county jail]. Thus, this Court is required to review the case and identify cognizable claims or dismiss the complaint, or any portion of the complaint, if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A.

A court should dismiss a constitutional civil rights claim only if it appears beyond doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir. 1988) (citing *Owens v. Rush*, 654 F.2d 1370, 1378-79 (10th Cir. 1981)). For purposes of reviewing a complaint for failure to state a claim, all allegations in the complaint must be presumed true and construed in a light most favorable to plaintiff. *Id.*; *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). Furthermore, *pro se* complaints are held to less stringent standards than pleadings drafted by lawyers and the court must construe them liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations. *Hall*, 935 F.2d at 1110. *See also* Fed. R. Civ. P. 12(b)(6) and *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (setting forth standards for evaluating the sufficiency of a claim).

After liberally construing Plaintiff's *pro se* complaint, *see Haines*, 404 U.S. at 520-21; *Hall*, 935 F.2d at 1110, the Court concludes that, as discussed below, Plaintiff has failed to exhaust administrative remedies prior to bringing this action and his claims fail to state a claim upon which relief may be granted and, therefore, shall be dismissed without prejudice.

**A. Failure to exhaust administrative remedies**

The Prison Litigation Reform Act of 1996 ("PLRA") provides in part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n. 1 (10th Cir. 2001). Plaintiff was incarcerated at the Howard McLeod Correctional Center in Atoka, Oklahoma, on the date that this lawsuit was filed.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, *supra*.

In the instant case, Bryan County Jail has an Inmate Grievance Policy and Procedures which provide an internal grievance procedure for resolving complaints arising from jail operations. *See*, Dkt. # 17-3. While nothing attached to the Special Report indicates that inmates are advised of the "Inmate Grievance Procedures," they are provided a copy of the "Inmate Rules and Regulations" upon book-in and those rules advise them of the availability of an "inmate grievance form." Dkt. # 17-4. According to the motion to dismiss, Plaintiff

never submitted a grievance regarding any of the claims he makes in this action. Plaintiff does not contest this allegation. Accordingly, this complaint must be dismissed pursuant to 42 U.S.C. § 1997e(a).

**B. Failure to State a Claim**

Assuming for purposes of argument that plaintiff had exhausted his administrative remedies, the Court finds the complaint fails to state a claim upon which relief may be granted and, therefore, should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In order to state a claim for relief, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(A)(2). While detailed factual allegations are not required, more is required than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.: A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations omitted).

To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege a set of historical facts, which, if proven true, would demonstrate that the named defendant(s) violated his constitutional rights while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-2255, 101 L.Ed.2d 40 (1988). While the Due Process Clause governs a pretrial detainee's claim of

unconstitutional conditions of confinement, *see Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the benchmark for such claims is the Eighth Amendment. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) and *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (1996). An Eighth Amendment claim has two components "which must be proven to support a remedy: an objective component, the alleged deprivation must deny 'the minimal civilized measure of life's necessities,' *Rhodes v. Chapman*, 425 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), and a subjective component, the responsible official must have a sufficiently culpable state of mind, *i.e.* deliberate indifference, *Wilson v. Seiter*, 501 U.S. 294, 299-304, 111 S.Ct. 2321, 2324-27, 115 L.Ed.2d 271 (1991) (conditions of confinement case)." *McClendon, supra*. Failure to provide basic necessities, if sufficiently prolonged and severe, can satisfy the objective component. *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996). The Tenth Circuit has found that a lack of toothpaste and razors for two months, combined with a allegation of tooth decay, was sufficient to raise a genuine issue of material fact in regard to whether prison officials' alleged denial of hygienic items caused plaintiff serious harm. *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996).

To state a § 1983 claim for a violation of a prisoner's constitutional rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to his serious medical needs. *Wilson, supra*, 501 U.S. at 297-99; *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). In the case of an alleged claim of inadequate medical care, the objective component requires that the pain or deprivation be sufficiently serious; while the subjective component again requires the official to act with deliberate indifference. *Id*. Allegations of "inadvertent failure to provide adequate medical care" or of a "negligent . . . diagnos[is]," "simply fail to establish the requisite culpable state of mind," *Wilson*, 501 U.S. at 297, 111 S.Ct. at 2323,

necessary to satisfy the subjective component. *Miller v. Glanz*, 948 F.2d 1562 (10th Cir. 1991). Negligence does not state a claim under § 1983 for deliberate indifference to medical needs. *Estelle*, *supra*, 429 U.S. at 106, 97 S.Ct. at 292; *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993). In addition, the Tenth Circuit has held that a delay in medical care only constitutes a constitutional violation where the plaintiff can show that the delay resulted in substantial harm. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir.2001).

The Equal Protection Clause requires the government to treat similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)(citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). A viable equal protection claim requires a plaintiff to "first make a threshold showing that they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (1998).

Prison inmates, as well as pre-trial detainees, retain their First Amendment rights to communicate with family and friends, including reasonable access to the telephone. *Carter v. O'Sullivan*, 924 F.Supp. 903, 909 (C.D. Ill. 1996) (citing *Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991). Furthermore, denial of attorney phone calls would run afoul of the Sixth Amendment. *Id*. Reasonable restrictions on First Amendment communication rights are, however, allowed based upon security problems inherent in jails. *Id*., (citing *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988)).

Finally, it is well established that a civil rights defendant may not be held individually liable under section 1983 unless the defendant caused or participated in the alleged constitutional deprivation. *Housley v. Dodson*, 41 F.3d 597, 600 (10th Cir. 1994). The Plaintiff names eleven

defendants in the caption of his complaint. However, the only persons actually named in the body of his complaint is Defendant Sturch. Additionally, the plaintiff names Officer Eisenburg[6] in the Brief in Support of his Complaint as actually providing at one point, what appears to be appropriate, medical care to him. While the plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment, race discrimination in violation of the Equal Protection Clause and medical negligence, he does not specifically claim that any of these defendants personally caused or participated in the alleged constitutional deprivations with the exception of Defendant Sturch. Rather, his allegations are conclusory with no factual support.

Although, as previously stated, an inmate's pleadings should be liberally construed, the liberal construction rule "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be heard." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). Assuming that all of the allegations contained in the plaintiff's complaint are true, plaintiff has not alleged sufficient facts to establish that he was subjected to cruel and unusual punishment by any of the named defendants. Rather, plaintiff alleges, while he was placed in a "Lock-Down Cell" for between five (5) and twelve (12) days[7] during which time he was not allowed to shower, was not allowed to purchase any clothing to wear or purchase any hygiene items. The plaintiff does not allege, however, that he was not provided with some clothing and/or hygiene items during this period of time or that there was no toilet or sink in his cell which he could use to clean himself and/or his clothing. Plaintiff also does not allege that the denial of clean clothing or hygiene items for this short period of time caused any harm.

---

[6]According to Defendants' Notice of Removal, this defendant's correct name is Tracy Isenberg.

[7]In Dkt. # 2-2, at p. 2 ¶ 6 plaintiff claims he was in the Lock-Down Cell for twelve (12) days. In the same document at p. 6 he was it was for five (5) days.

The documents filed by the plaintiff on August 20, 2013 (Dkt. # 33) establish that he asked jail staff on September 2, September 6, and September 7 when he would be allowed to make a phone call to his relatives to let them know where he was. In addition, according to plaintiff's documents, on September 26 the plaintiff had trouble ordering commissary and the staff indicated "[plaintiff] should be able to make the call now the phones have been reset." *Id.*, at p. 10. No appeal was ever perfected from the staff responses to these requests. Further, Plaintiff does not allege that any of the named defendants personally refused to allow him to make a telephone call. Additionally, he does not allege that he was prevented from contacting his legal counsel or that he was not allowed to visit with legal counsel. The plaintiff also does not allege any harm suffered as a result of not being able to communicate with his family for a relatively short period of time.

Plaintiff also claims he was not given any "proper medical attention" while in the "Lock-Down Cell." However, Plaintiff does not identify any defendant who prevented him from obtaining medical care. Moreover, even when he states Sheriff Sturch failed to properly train employees in the Bryan County Jail "in the handling and dispensing of medicines, he does not identify any policies or procedures which prevented him from obtaining medical care while in the "Lock-Down Cell" or during the remainder of his stay at the Bryan County Jail. Rather, the Plaintiff admits that Officer Eisenburg, on at least one occasion, checked his blood pressure and called a doctor for instructions regarding what she should do for his high blood pressure and that after following the doctor's instructions, his blood pressure dropped within an hour. Moreover, while alleging Sheriff Sturch failed to "ensure employees of the Bryan County Jail do not discriminate against inmates because of their race," plaintiff does not make any allegations showing how he was treated

13

differently from similarly situated inmates or who actually treated him differently.[8]  As a result, this Court finds Plaintiff has failed to state a claim upon which relief can be granted.

In light of the plaintiff's failure to exhaust any of his complaints,[9] this Court finds dismissal without prejudice is the appropriate remedy.  Accordingly, this Court hereby dismisses, pursuant to 42 U.S.C. § 1997e(a), this action without prejudice for failure to exhaust, and pursuant to 28 U.S.C. § 1915A, for failure to state a claim for relief.  This dismissal shall be entered as a "STRIKE," pursuant to 28 U.S.C. § 1915(g).

It is so ordered on this  24th  day of September, 2013.

James H. Payne
United States District Judge
Eastern District of Oklahoma

---

[8] An affidavit submitted by plaintiff indicates, as discussed herein, that staff treated him "badly" and were rude to him. To assume any difference in treatment was racially motivated is purely conclusory.

[9] The Court notes that the defendants have objected to this Court's considering plaintiff's supplemental documents because they claim they are not "clearly readable" and it appears that some of the documents may not be a copy of the entire document (Dkt. # 35).  The Court has, however, reviewed these documents and find them sufficient for this Court to ascertain that the jail staff were timely responding to the plaintiff's requests and yet, plaintiff failed to appeal any of these issues.